UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN POWERS,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY OF REDWOOD CITY, et al.,<br><br>        Defendants. | Case No. 25-cv-10800-JST<br><br>**ORDER GRANTING MOTIONS TO DISMISS; CONTINUING CASE MANAGEMENT CONFERENCE**<br><br>Re: ECF Nos. 4, 12, 17 |

Before the Court are motions to dismiss from Defendants Monica Martinez, City of Redwood City, and County of San Mateo. ECF Nos. 4, 12, 17. The motions are granted.

## I.     BACKGROUND

Plaintiff Brian Powers filed this lawsuit on December 18, 2025, naming the City of Redwood City, the County of San Mateo, Monica Martinez, and several Doe defendants. ECF No. 1. He alleges that law enforcement officers (1) refused to investigate his complaints concerning alleged financial crimes; and (2) "exercised state authority against [him]" in an unspecified manner based on uncorroborated allegations from Monica Martinez, which somehow affected his child custody arrangements.

Powers alleges that he sought to report "identity theft, harassment, and related misconduct" to law enforcement agencies of San Mateo County and Redwood City, but officers refused to take his report or redirected him endlessly between departments. ECF No. 1 ¶¶ 16–18. Although Redwood City Police Department accepted an identity-theft report eight or nine months after Powers began lodging complaints, by that point he had already faced closed accounts, collection attempts, and damage to his credit. *Id*. ¶¶ 40–41.

Around the same time, Martinez, a doctor, allegedly "communicated mental-health

concerns regarding [Powers] to law-enforcement officers" despite having no contact with him for "four to five months." *Id*. ¶¶ 19–20.  Powers alleges that "[t]he communications initiated by Martinez to law enforcement occurred after [he] reported criminal conduct and identified Martinez as a potential perpetrator." *Id*. ¶ 25.  Powers further alleges, without elaborating, that Martinez has "directed legal process toward individuals associated with Plaintiff's litigation efforts, including personnel at his workplace, resulting in adverse professional consequences." *Id*. ¶ 47.

Martinez's information led officers to initiate welfare checks, but those returned "no findings of concern." *Id*. ¶¶ 22–23.  Nonetheless, officers continued to rely on Martinez's allegations as authoritative despite undertaking no further independent investigation to confirm them. *Id*. ¶ 24.  Specifically, acting on Martinez's allegations, "law-enforcement officers conveyed mental-health conclusions regarding [Powers] to third parties, including [Powers's] former spouse, and advised actions relating to child safety and custody." *Id*. ¶ 30.  Powers alleges that the officers did not inform him of Martinez's allegations against him. *Id*. ¶ 36.

Finally, Powers alleges that these harms he experienced "were not isolated or accidental, but resulted from municipal policies, practices, and customs, including reliance on third-party allegations without verification, failure to correct erroneous assumptions after direct contact, and ratification of unconstitutional conduct through inaction by supervisory and oversight mechanisms." *Id*. ¶ 56.

Powers brings his claims under 42 U.S.C. § 1983 against the municipal defendants for violations of his procedural due process and equal protection rights, *id*. ¶¶ 57–66, and against all defendants for first amendment retaliation and interference with familial association, *id*. ¶¶ 67–73.  Powers also includes a separate claim against the municipal defendants for "municipal liability/*Monell*," but this claim does not allege independent constitutional harms, rather apparently intending to establish municipal liability for claims one through four.  ECF No. 1 ¶¶ 79–82 (arguing that Powers's "constitutional injuries were caused by Defendants' policies, practices, and customs").  Similarly, a separate claim against Martinez is for "joint action under color of state law" and likewise appears intended to establish that she is properly named under counts three and four. *Id*. ¶¶ 74–78.

2

Proceeding pro se, Martinez filed a motion to dismiss on January 4, 2026.  ECF No. 4.[1] The County of San Mateo filed a motion to dismiss on January 12, 2026.  ECF No. 12.  Redwood City filed a motion to dismiss on January 21, 2026.  ECF No. 17.  Powers opposed all three motions on February 1, 2026.  ECF No. 18.  The County of San Mateo replied on February 2, 2026 and the Redwood City replied on February 11, 2026.  ECF Nos. 19, 20.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  However, mere legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 678–79.

As here, a "document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citation omitted).  However, "[e]ven a 'liberal interpretation of a . . . complaint may not supply essential elements of the claim that were not initially pled.'"  *Foregger v. Redfin Corp.*, 2025 WL 1829174, at *2 (N.D. Cal. July 2, 2025) (quoting *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266,

---

[1] Martinez is now represented by counsel.  ECF No. 31.

3

268 (9th Cir. 1982)).

## IV.    DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or the laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Powers's claims, all of which are brought under Section 1983, fail for several reasons. First, the factual allegations against all defendants are so sparse that the Court cannot discern which defendants are responsible for which conduct or even what the alleged conduct was. Second, with respect to Defendant Martinez, Powers fails to allege that she acted under color of state law. Third, with respect to the municipal defendants, Powers fails to allege municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Finally, Powers fails to allege necessary elements of each of his four substantive claims.

### A.    Failure to Plead Sufficient Facts

In its motion to dismiss, the County of San Mateo argues that Powers has not satisfied the elements of any of his claims against the County because he "fails to allege any acts by San Mateo County or its employees that could establish the required elements." ECF No. 12 at 4, 5, 6. Similarly, Redwood City's motion to dismiss argues that Powers's complaint "does not identify any specific City officer, any actionable conduct by the City, or any municipal policymaker capable of ratifying unconstitutional behavior." ECF No. 17 at 7; *see also id*. at 10 ("[T]he complaint broadly attributes alleged misconduct to multiple Defendants without factual differentiation, rendering it impossible to discern a plausible basis for liability as to the City.").

Claims that are not attributed to any defendant or defendants in particular impede defendants' ability to mount a defense and are not "plausible" under *Twombly*. *See Jones v. Cmty. Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (holding that to survive a motion to dismiss, "the plaintiff 'must allege with at least some degree of particularity overt acts which defendants engaged in' that support the plaintiff's claim" (quoting *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir.1977)); *Petrovich v. Ocwen Loan Servicing, LLC*, No. C-15-0033 EMC, 2015 WL 3561821, at *4 (N.D. Cal. June 8, 2015) (dismissing nonjudicial foreclosure claim because

United States District Court
Northern District of California

"nowhere in its claim is a particular Defendant mentioned by name, and nowhere is an actual event attributed to them," so "the Court cannot find the claim plausible under *Iqbal* and *Twombly*"); *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1025 (D. Ariz. 2017), *on reconsideration in part,* No. 2:16-CV-2138-HRH, 2017 WL 4337340 (D. Ariz. Sept. 29, 2017) (dismissing fraud by misrepresentation claims because they "inadequately delineate the conduct attributed to each defendant"). The complaint fails to state plausible claims because it does not attribute most of the conduct alleged to a particular law enforcement agency or particular officers or other employees.[2]

On a similar vein, the complaint fails to allege sufficient facts to put defendants on notice of the allegedly problematic conduct, to allow the Court to adjudicate it, or to render the claims plausible. For instance, Powers does not explain what Martinez's reports about him alleged or what actions law enforcement officers took in response. He does not describe what officers did to affect his child custody arrangement or explain how that arrangement was impacted or harmed. He does not explain the "legal process" that Martinez directed towards "individuals associated with [Powers's] litigation efforts," or who these individuals are. ECF No. 1 ¶ 47. Although he states that he attempted to make reports concerning identity theft and financial crimes, he provides no dates or other details of those attempts or the underlying crimes. In sum, Powers's claims lack the requisite factual basis.

### B.    Under Color of State Law

In her motion to dismiss, Defendant Martinez argues that the facts stated in the complaint fail to establish that she acted under color of state law within the meaning of Section 1983. ECF No. 4. The Court agrees. There is a "presumption that private conduct does not constitute governmental action," which can be overcome only in rare circumstances, including when the private individual engaged in "joint action" with state officials. *Sutton v. Providence St. Joseph*

---

[2] There are two narrow exceptions. First, the complaint identifies an Officer Psaila, but does not state Psaila's affiliation, explain how or when Psaila interacted with Powers, or describe any actions that Psaila took. ECF No. 1 ¶ 27. Second, the complaint describes one attempt to file a report with the Redwood City Police Department, but does not provide dates, officer names, or details of the alleged crimes. *Id*. ¶¶ 37–39.

*Med. Ctr.*, 192 F.3d 826, 836 (9th Cir. 1999). "The joint action test asks 'whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights,'" which can be shown through evidence of conspiracy or by showing that the private party was a "willful participant" in the joint action. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (quoting *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002)). There must be a "substantial degree of cooperation" between the private actor and the state to support finding there a private actor jointly acted with the state. *Franklin*, 312 F.3d at 445.

Powers alleges that Martinez submitted reports about him to law enforcement. Private individuals do not act under color of state law merely by reporting information to police, cooperating with law enforcement, or providing statements that officers later rely upon. "[M]erely 'supplying information [to the state] alone does not amount to conspiracy or joint action.'" *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1124 (N.D. Cal. 2020) (citations omitted); *see Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989) ("[M]erely complaining to the police does not convert a private party into a state actor."); *cf. Arnold v. IBM Corp.*, 637 F.2d 1350, 1357 (9th Cir. 1981) (finding that even though the law enforcement activities causing the plaintiff's constitutional injuries relied on information and funding from IBM, IBM did not proximately cause the injuries because it did not "exert[] any control over the decision making of the [officers]").

In response, Powers asserts that he doesn't allege "passive reporting" but "a pattern of repeated, authoritative communications by Martinez to law enforcement, invoking professional credibility." ECF No. 18 at 6. But fact that Martinez made repeated reports and invoked her credibility as a doctor doesn't convert her "passive reporting" into "joint action," and Powers offers no argument or explanation to the contrary. The fact that "[l]aw-enforcement officers credited and deferred to her conclusions" is also not fairly attributable to Martinez and, per the above-enumerated authorities, doesn't convert her reporting activity into joint action. Powers also provides no support for his argument that "[a] private actor who knowingly supplies allegations that predictably trigger state action—and who continues to do so after observing that effect—may be deemed a willful participant in joint activity." ECF No. 18 at 7. Because he alleges only that

United States District Court
Northern District of California

6

Martinez reported certain unspecified concerns to law enforcement and that law enforcement acted on those concerns in an unspecified manner, Powers has failed to allege that Martinez is a state actor for the purposes of Section 1983.

### C.    *Monell* Liability

The County also argues that Powers has "not pleaded that 'his deprivation resulted from an official policy or custom established by a municipal policymaker possessed with final authority to establish that policy.'"  ECF No. 12 at 7 (quoting *Erdman v. Cochise Cty., Ariz.*, 926 F.2d 877, 882 (9th Cir. 1991)).  Redwood City likewise argues that "Plaintiff wholly fails to plausibly allege that any City policy, practice, or custom caused a constitutional injury, dooming his *Monell* claim at the threshold."  ECF No. 17 at 7.

A municipality is liable under 42 U.S.C. § 1983 only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," causes a deprivation of the plaintiff's rights.  *Monell*, 436 U.S. at 694. To allege a *Monell* claim, a plaintiff must identify a specific policy or custom and explain how it caused the plaintiff's alleged constitutional violation.  *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

Although Powers includes several paragraphs purporting to establish *Monell* liability, they are insufficient, stating merely that the acts complained of "resulted from municipal policies, practices, and customs, including reliance on third-party allegations without verification, failure to correct erroneous assumptions after direct contact, and ratification of unconstitutional conduct through [supervisory] inaction."  ECF No. 1 ¶ 56.  He also states that the municipal defendants had practices of "refusing acceptance of mandatory crime reports," "failing to intake or preserve evidence," "fail[ing] to correct erroneous assumptions," and "closed-loop referral practices that deny meaningful redress."  *Id*. ¶ 80.  Powers does not plead facts establishing that any of the alleged practices were sufficiently widespread to constitute a departmental practice, nor that they resulted from the decision of "a municipal policymaker possessed with final authority to establish that policy."  *Erdman*, 926 F.2d at 882.  In fact, Powers's *Monell* claims are in significant tension with his class-of-one equal protection claim, which suggests that the defendants' refusal to accept

United States District Court
Northern District of California

or act upon Powers's allegations was the result of "selective treatment," in contrast to a general official policy.  ECF No. 1 ¶¶ 64, 66.

Finally, Powers alleges that the municipal defendants "ratifi[ed ]unconstitutional conduct through inaction by supervisory and oversight mechanisms."  *Id*. ¶¶ 56, 80.  "Mere negligence will not suffice to show *Monell* liability."  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021); *see also Canton v. Harris*, 489 U.S. 378, 390 (1989).  While it is possible to establish *Monell* liability through official ratification of subordinate acts, such a theory requires that "authorized policymakers approve a subordinate's decision and the basis for it," which Powers has not alleged.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).

Powers has failed to establish that either of the municipal defendants is liable under *Monell*.

### D.      Specific Claims

Powers has also failed to allege required elements of each of his claims.  His first claim is for violation of his procedural due process rights.  ECF No. 1 ¶¶ 57–62.  "A [S]ection 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process."  *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  Powers has not shown the deprivation of a constitutionally protected interest.  He essentially alleges that officers refused to investigate or prosecute his concerns, but an individual has no right for officers to investigate his complaints, and prosecutors may not be compelled to initiate an investigation or prosecution.  *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police have no affirmative obligation to investigate a crime in a particular way or to protect one citizen from another even when one citizen deprives the other of liberty [or] property."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.").

Powers argues that his claims go beyond the mere failure to investigate because "while denying him access to mandatory police services, municipal defendants escalated the use of state

8

authority against him based on unverified third-party allegations." ECF No. 18 at 8. "That combination—selective denial on one hand, coercive escalation on the other—states plausible violations of the . . . Fourteenth Amendment[]." *Id*. However, procedural due process claims require a deprivation of a liberty or property interest, and "escalat[ing] the use of state authority" does not allege such a deprivation. In addition, Powers has not alleged facts rendering plausible the combination of "selective denial" and "coercive escalation." Rather, the facts alleged in his complaint are more consistent with the normal exercise of official discretion in declining to investigate certain complaints while investigating others, based on the credibility of the complainant or the specifics of the complaint.

Powers next alleges a "class of one" equal protection claim, ECF No. 1 ¶¶ 63–66, which requires the plaintiff to allege facts showing that he has been "[1] intentionally [2] treated differently from others similarly situated and that [3] there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Powers's complaint does not allege that he was treated differently from others similarly situated. Indeed, it does not identify any others similarly situated. While he alleges that "[d]efendants treated allegations made [by Martinez] about Plaintiff as presumptively credible and actionable, while refusing to accept or act upon allegations made by Plaintiff regarding crimes committed against him," he does not allege facts showing that he and Martinez are similarly situated. ECF No. 1 ¶ 64.

Powers third asserts that he was retaliated against for protected speech in violation of the First Amendment. ECF No. 1 ¶¶ 67–69. To state a First Amendment retaliation claim, the plaintiff must allege that "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010). The complaint alleges no causal connection between the protected speech (the reports Powers made to law enforcement) and the defendant's adverse action (refusing to investigate those reports, "scrutinizing" Powers based on Martinez's

United States District Court
Northern District of California

reports, and communicating with Powers's former spouse). In his response, Powers suggests that the officers' knowledge of his protected activity and temporal proximity to the retaliatory actions should suffice to establish causality, ECF No. 18 at 10, but Powers has not alleged temporal proximity. Moreover, temporal proximity would not suffice because a clear alternative explanation for the alleged retaliation is suggested by the complaint: the officers were concerned by Martinez's reports but not by Powers's reports. *See, e.g.*, *Lam v. City & Cnty. of San Francisco*, 868 F. Supp. 2d 928, 949–50 (N.D. Cal. 2012), *aff'd*, 565 F. App'x 641 (9th Cir. 2014).

Finally, Powers alleges interference with familial relationships in violation of the substantive due process component of the Fourteenth Amendment. ECF No. 1 ¶¶ 70–73. The Ninth Circuit has recognized that "parents have a Fourteenth Amendment liberty interest in the companionship and society of their children" and "[o]fficial conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Powers has alleged no conduct that "shocks the conscience." The allegation that officers "communicated mental-health conclusions to third parties" and "advised actions relating to child safety and custody" without "independent investigation, firsthand evaluation, or notice" do not suffice. *See* ECF No. 18 at 11. In addition, although Powers has vaguely alleged that officers' actions "affected child custody decisions," he fails to allege with any specificity that he was deprived of the companionship and society of his children.

Powers has failed to allege necessary elements of each of his four substantive claims.

## CONCLUSION

Although the Court is skeptical that Powers will be able to cure the deficiencies identified herein, it grants him leave to file an amended complaint within 28 days of the date of this order. At a minimum, the amended complaint must (1) describe the relevant events with specificity, including attributing the alleged acts to particular officers and departments, providing the relevant dates, elucidating the contents of the reports made by Powers and Martinez, and describing the actions taken by officers in response to those reports; (2) allege with specificity each component

United States District Court
Northern District of California

United States District Court
Northern District of California

of the legal claims raised.  The failure to do so will result in dismissal with prejudice.

The case management conference scheduled for June 16, 2026 is continued to September 22, 2026 at 2:00 p.m.  Updated case management statements are due September 15, 2026.

**IT IS SO ORDERED.**

Dated:  June 15, 2026



JON S. TIGAR
United States District Judge

11